# "UNDER SEAL"

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

FILED
CHARLOTTE, NC
DEC 17 2007
U.S. DISTRICT COURT
WESTERN DIST OF NC

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 3:07-CR-154-C |
| vs. ) | |
| ) | |
| CHRISTOPHER OTIKO ) | **UNDER SEAL** |

## GOVERNMENT'S MOTION FOR A HEARING
## TO DETERMINE CJA ELIGIBILITY AS
## TO DEFENDANT CHRISTOPHER OTIKO

COMES NOW the United States of America, by and through Gretchen C.F. Shappert, United States Attorney for the Western District of North Carolina, and hereby moves this honorable court to hold a hearing in order to determine whether defendant Christopher Otiko is eligible for appointment of counsel pursuant to the Criminal Justice Act.

## BACKGROUND

On July 18, 2007 a federal Grand Jury sitting in the Western District of North Carolina (Charlotte Division) returned a 103 count indictment charging Christopher Otiko ("Otiko") and four co-defendants with conspiracy to distribute Schedule III and IV controlled substances and distribution of Schedule III controlled substances, in violation of Title 18, United States Code, Sections 846 and 841(a)(1). According to the indictment, from in or about August 2002 through in or about May 2006, Otiko, a licensed podiatrist, and others caused the distribution of controlled substances other than for a legitimate medical purpose and not in the usual course of professional practice.

1

Otiko was arrested and made an initial appearance in the Central District of California on July 20, 2007. He was represented by retained counsel D. Michael Bush. Otiko was released on bond following the initial appearance. On August 7, 2007 Otiko made his initial appearance in this district. He was again represented by retained counsel, D. Michael Bush.[1] On November 13, 2007, Mr. Bush moved to withdraw as counsel indicating that 1) he was not experienced in the practice of criminal law and 2) Otiko lacked the financial resources to pay him or any other attorney. The motion was granted without a hearing on November 15, 2007 and attorney Mark Foster was appointed pursuant to the Criminal Justice Act.

## **MEMORANDUM OF LAW**

The Criminal Justice Act (CJA) provides for appointment of counsel for a "financially eligible person" who is unable to obtain adequate representation. See 18 U.S.C. § 3006A(a)(1). To be "financially eligible" the defendant must be unable to afford representation, though he need not prove that he is indigent or destitute. See *United States v. O'Neil*, 118 F.3d 65, 74 (2d Cir.1997), *cert. denied*, 522 U.S. 1064 (1998); *United States v. Harris*, 707 F.2d 653, 660 (2d Cir.), *cert. denied*, 464 U.S. 997 (1983).

The burden of proving inadequate financial means lies with the defendant. *United States v. Sarsoun*, 834 F.2d 1358, 1362 (7th Cir.1987); *United States v. Binder*, 794 F.2d 1195, 1202 (7th Cir.), *cert. denied sub nom. Celani v. United States*, 479 U.S. 869 (1986) (defendant is required to make a "satisfactory showing" that he cannot pay for his own attorney). In determining whether the defendant has met this burden and demonstrated financial inability, the Court takes into account such factors as the defendant's assets and liabilities, his income and

---

[1] The government was advised that while Mr. Bush was counsel of record, attorney Benjamin Gluck of Los Angeles, CA would assist the defense as an advisor and legal consultant.

2

expenses, the needs of defendant and his family, the potential cost of the defendant's representation, funds given to the defendant by others for limited purposes only, the existence of hidden assets, availability to the defendant of income earned by a spouse or from some other source, and the credibility of the defendant's representations as to his financial affairs. *See generally United States v. Barcelon*, 833 F.2d 894, 897 (10th Cir.1987); *United States v. Martinez-Torres*, 556 F.Supp. 1275, 1279 (S.D.N.Y.1983).

A person is "financially unable to obtain counsel" within the meaning [of the CJA] if his net financial resources and income are insufficient to enable him to obtain qualified counsel. In determining whether such insufficiency exists, consideration should be given to (a) the cost of providing the person and his dependents with the necessities of life, and (b) the cost of the defendant's bail bond if financial conditions are imposed, or the amount of the case deposit the defendant is required to secure his release on bond. See Administrative Office of the United States Courts, Guide to Judiciary Policies and Procedures ("Guide"), vol. VII, at § 2.04. See also *United States v. Hennessey*, 575 F.Supp. 119, 120-121 (N.D.N.Y.1983), *aff'd without opinion*, 751 F.2d 372 (2d Cir.1984). The government is generally entitled to a hearing on the issue of the defendant's eligibility. *Harris*, 707 F.2d. at 662-663; *United States v. Herbawi*, 913 F.Supp 170, 173 (W.D.N.Y. 1996).

In the instant case, an examination of the defendant's finances immediately proceeding the indictment has revealed a spider's web of bank accounts and financial transactions. The defendant had signature authority for at least ten (10) business entities and at least fifteen (15) separate bank accounts at multiple banks. Between 2004 and 2007, combined deposits into those various accounts exceeded $7 million. As of June 2007 most of theses accounts had either been closed or were inactive. However, a review of bank records shows that typically the funds

deposited into his accounts in a given month would be immediately transferred to other accounts or withdrawn as cash and deposited into accounts at other banks. Also, new accounts were sometimes opened as older accounts were closed. As a result, "following the money trail" and determining the ultimate disposition of the funds has been extremely complicated and time-consuming.

In the first four months of 2007, Otiko's *personal* banking account at *one bank* showed the following activity:

| Month | Total Monthly Deposits |
|---|---|
| 1/07 | $20,318.00 |
| 2/07 | $77,157.51 |
| 3/07 | $27,766.05 |
| 4/07 | $31,638.95 |
| **TOTAL:** | **$156,880.51** |

In addition, during the first six months of 2007, at yet another bank, approximately $368,000 flowed through both his business and personal accounts combined. Furthermore, the home in which the defendant resides, located at 7655 Dufferin Avenue, Riverside, CA, consists of a 5200 square foot home, 1300 square foot attached guest home and 3000 square foot carriage house (where his parents reside) all on 5.7 acres of land. In the Defendant's own words:

> This beautiful 7,000 square foot hilltop Mansion is perched on 6 acres of stunning landscape, with breathtaking city views... The property is both private and secluded and has full amenities...This gorgeous estate provides ... huge dance floor, ...DJ, ...on-premise parking with complimentary shuttle service, large food buffet, pool table, air hockey, multiple Jacuzzi tubs, rock waterfall jacuzzi, spacious starlit decks, and smoking patio.

See http://www.lifestylemansionparty.com/.

4

This property was purchased on March 8, 2006 for $1.97 million. It is encumbered with two mortgages for approximately $1.7 million and $221,000. Although the legal owner of the property is a friend of Mr. Otiko's, all of the government's evidence indicates that the defendant not only resides in the home but is responsible for making at least part of the very sizable monthly mortgage payments. In addition to being the defendant's private residence he purports to run a "spa" and private club out of his "mansion." The property is subject to a *lis pendens* filed by the government following indictment.

While it is possible that the defendant has depleted all of his assets and no longer has sufficient resources or income to retain counsel, the amount of funds flowing through his various bank accounts since 2004, makes that seem unlikely. Furthermore, the fact that the defendant, a licensed podiatrist, maintains multiple businesses, lives in and pays the mortgage for a $1.97 million home, while having the U.S. taxpayers pay for his lawyer, certainly warrants further inquiry from the court.

## CONCLUSION

**WHEREFORE**, for the foregoing reasons, the United States respectfully requests that the court conduct a hearing to determine whether defendant Christopher Otiko qualifies for court

appointed (CJA) counsel. It is further requested that this motion be placed under seal until further order of the Court.

RESPECTFULLY SUBMITTED, this the 17th day of December, 2007.

FOR THE UNITED STATES:
GRETCHEN C.F. SHAPPERT
UNITED STATES ATTORNEY

Dana O. Washington
Assistant United States Attorney
Virginia Bar # 31981
227 West Trade Street, Suite 1650
Charlotte, North Carolina 28202
(704) 344-6222 (office)
(704) 344-6629 (facsimile)
dana.washington@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of December 2007, the foregoing document was served via U.S. mail as follows:

Mark Patrick Foster, Jr.
Nixon, Park, Gronquist & Foster
101 N. McDowell Street, Suite 126
Charlotte, NC 28204

GRETCHEN C.F. SHAPPERT.
UNITED STATES ATTORNEY

Dana Owen Washington
Assistant United States Attorney